**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

| | | |
|---|---|---|
| RICHARD JEAN MARY, individually and on behalf of all others similarly situated, | ) ) ) | Case No. 24-cv-61213-AHS |
| Plaintiff, | ) ) ) | |
| v. | ) ) | |
| PROFESSIONAL PARKING MANAGEMENT CORPORATION, | ) ) ) | |
| Defendant. | ) ) | |

**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED**
**COMPLAINT, AND INCORPORATED MEMORANDUM OF LAW**

Defendant Professional Parking Management Corporation ("PPM") respectfully moves to dismiss this action pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. In support of its Motion, PPM states as follows:

## INTRODUCTION

By amending the Complaint, rather than responding to PPM's Motion to Dismiss (DE 18), Plaintiff has conceded that he has no claim. Moreover, the amendment is futile. The First Amended Complaint (the "Amended Complaint") (DE 21) merely adds conclusory allegations reciting DPPA's provisions (*see* DE 21 at ¶¶ 26-43), and one fatal allegation *admitting* that Section 715.075, Florida Statutes, expressly authorized PPM to obtain, disclose, or use Plaintiff's personal motor vehicle record information in the manner alleged. *See id.* ¶ 44. A cursory review of the Amended Complaint thus shows that Plaintiff has again failed to, and will never be able to, plead a DPPA claim and that Plaintiff lacks standing to bring a claim.

Plaintiff's factual allegations are simple: he alleges that after he parked at one of PPM's privately-owned and operated parking lots and failed to pay, PPM obtained his name and address from the Department of Motor Vehicles ("DMV") in order to send him a letter seeking payment for the parking. That is Plaintiff's sole basis for relief. Plaintiff does not assert any actual harm or damages, and he does not contest that he owed PPM payment for parking. Nor does he allege that his "personal information" (*i.e.*, his name and address) was disclosed to any third-party; rather, he admits PPM's single letter was sent by PPM only to his residence. Having suffered no actual harm, Plaintiff instead bases this action solely on unsupported allegations regarding the Driver's Privacy Protection Act, 1 U.S.C. § 2721-2725 ("DPPA"). However, the law is clear that a bare statutory violation, which is all Plaintiff alleges, is insufficient to confer standing.

Setting aside Plaintiff's lack of standing, the Amended Complaint fails to state a plausible claim for relief. Plaintiff must plead that PPM used his DMV information for an impermissible purpose under DPPA, but cannot do so. Plaintiff concedes that DPPA explicitly authorizes fourteen permissible uses, at least two of which apply here. First, DPPA authorizes the use of DMV information in anticipation of potential litigation or adjudication. Courts routinely hold that DPPA permits the use of DMV information to issue non-payment notices or tickets, as such notices or tickets are the first step in initiating potential litigation or informal adjudication/dispute resolution. The letter PPM sent to Plaintiff shows on its face that it was sent in anticipation of potential litigation or adjudication. Second, DPPA authorizes the use of DMV information for any "use specifically authorized under the law of the State that holds the record, if such use is related to the operation of a motor vehicle or public safety." PPM's letter related to the operation of a motor vehicle and was specifically authorized by Florida statute, which Plaintiff admits. Plaintiff lacks standing, and his claims lack merit and should be dismissed.

## FACTUAL BACKGROUND[1]

Plaintiff alleges that on or about December 23, 2023, he "parked his vehicle at a parking lot managed by Defendant." (DE 21 ¶ 19). Plaintiff failed to pay for his parking, and PPM then obtained Plaintiff's "name" and "home address" from the DMV to send him a letter requesting payment. *Id.* ¶¶ 17, 19-22. On December 27, 2023, PPM sent this letter to Plaintiff, requesting

---

[1] PPM is simply restating Plaintiff's allegations for the purpose of this Motion, and in no way accepts the truth of Plaintiff's allegations. PPM reserves any and all arguments and defenses should this action proceed, including the right to compel arbitration.

payment for his unpaid parking. *Id.* ¶ 20. Plaintiff alleges that in obtaining and using his "name" and "home address" from the DMV, PPM invaded his statutory rights under DPPA. *Id.* ¶¶ 2.[2]

Plaintiff alleges in conclusory fashion that PPM obtained, disclosed and/or used Plaintiff's personal motor vehicle record information "for a purpose not permitted under the DPPA." *Id.* ¶ 48. Yet Plaintiff alleges zero facts to support this bald accusation. And Plaintiff's conclusory allegations as to the uses for which PPM did not use Plaintiff's motor vehicle record information are simply recitations of the statutory language of DPPA. *See id.* ¶¶ 26-43.

Indeed, Plaintiff has pled himself out of court by *admitting* that Section 715.075, Florida Statutes, expressly authorized PPM to obtain, disclose, or use Plaintiff's personal motor vehicle record information in the manner alleged in the Amended Complaint. *See* DE 21 ¶ 44. A cursory review of the notice provided to Plaintiff (*see* December 27, 2023 Nonpayment Notice ("Notice"), attached hereto as **Exhibit A**[3] at 2)[4] shows it contains the precise language required by statute. *Compare* § 715.075(1)(b); *with* Notice at 2. Additionally, as required by statute (§ 715.075(1)(d)), the Notice included a method to "file a dispute." *See* Notice at 2. Lastly, it adhered to the statute's

---

[2] Plaintiff brings a putative class action in connection with this alleged conduct, and seeks to represent a class of other individuals who similarly failed to pay for parking, and whose "name and home addresses" were therefore obtained so that PPM could send them a letter requesting payment. *Id.* ¶ 53.

[3] To address Plaintiff's concerns and in an abundance of caution, PPM has redacted Plaintiff's name, address, and license plate from the exhibit. Plaintiff will provide the Court with an unredacted copy upon request.

[4] The Notice is appropriately considered in this Motion as it is incorporated by reference in the Amended Complaint. *Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024) ("a court may properly consider a document not referred to or attached to a complaint under the incorporation-by-reference doctrine if the document is (1) central to the plaintiff's claims; and (2) undisputed, meaning that its authenticity is not challenged."). Here, the Notice is central to Plaintiff's claims as it is repeatedly referenced in the Amended Complaint (DE 21 ¶¶ 4, 17, 20-21, 46, 49, 70-71), and represents the only alleged "use" or "disclosure" of Plaintiff's information. *Id.* ¶¶ 4, 11, 20-21, 46, 49, 57, 64, 70-71. The Notice's authenticity is also undisputed—indeed, Plaintiff recites its contents in the Amended Complaint. *Id.* ¶¶ 19-21.

requirement (§ 715.075(1)(c)) that any notice be mailed within 5 business days of the violation. *See id.* at 1 (detailing violation date of December 23, 2023, and notice date of December 27, 2023).

Plaintiff does not dispute that he and the putative class owed the money that PPM attempted to collect. Plaintiff does not allege that he ever responded to the Notice or actually paid the "parking charge" or even the base parking rate. He also does not allege that PPM disclosed his name or home address to anyone other than himself—on the contrary, he pleads that the Notice was sent only to his home. (DE 21 ¶¶ 32, 46). The only injury Plaintiff asserts is that the Notice acted as "harassment, annoyance, nuisance," and as an "invasion of [his] privacy, and intrusion upon seclusion." *Id.* ¶ 3. Plaintiff does not seek or assert any actual damages or harm in this action. He only seeks "statutory damages under the DPPA," attorney's fees and costs. *Id.* ¶ 4.

## ARGUMENT

### I.   Plaintiff Has No Standing to Bring a DPPA Claim

#### a.   Standard Applicable to a Rule 12(b)(1) Motion

A facial challenge to standing asserts that the plaintiff's allegations, even when taken as true, do not provide a basis for subject matter jurisdiction. *Gentek Bldg. Prod., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). It is Plaintiff's burden to sufficiently allege facts supporting standing. *Id.* (*citing TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021)).

#### b.   Plaintiff Cannot Establish Injury-In-Fact

To demonstrate standing, a plaintiff must establish three elements: (1) he has suffered an injury in fact; (2) the injury is "fairly traceable to the challenged conduct of the defendant"; and (3) the injury is likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). An "injury in fact" is "an invasion of a legally protected interest which is (a) concrete and particularized…and (b) actual or imminent, not 'conjectural' or 'hypothetical.'"

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 996 (11th Cir. 2020) (same). To confer standing, an injury "must be real, and not abstract." *Spokeo*, 578 U.S. at 340 (internal citations omitted). Indeed, a plaintiff cannot merely allege "a bare statutory violation," to have standing. *Trichell*, 964 F.3d at 996) ( "[a] 'bare statutory violation' is not enough" to confer standing); *Hunstein v. Preferred Collection and Mgmt. Services, Inc.*, 48 F.4th 1236, 1242 (11th Cir. 2022). Instead, to have standing, a plaintiff must identify a harm that would be remediable "at common law." *Hunstein*, 48 F.4th at 1244 (quoting *TransUnion*, 594 U.S. at 423). Examples of such harms remediable at common law include "reputational harms, disclosure of private information, and intrusion upon seclusion." *TransUnion*, 594 U.S. at 425.

Plaintiff does not allege any actual damages here, and he does not dispute that he owed the money PPM attempted to collect. DE 21 ¶¶ 4, 19. Plaintiff does not allege that PPM sent, revealed, or otherwise "disclosed" his "personal information" to anyone other than himself, conceding that his information was sent only to him at home. *Id.* ¶¶ 32, 46. Thus, Plaintiff's information **has never even been "disclosed", since one's own information cannot be disclosed to themselves**. Having conceded that he was in no way actually harmed by PPM's conduct, Plaintiff's claim rests solely on alleged "statutory damages under the DPPA." *Id.* ¶¶ 4, 71. Yet a statutory violation alone is insufficient to confer standing. *Hunstein*, 48 F.4th at 1239 (noting binding Supreme Court and 11th Circuit precedent holding that a "bare statutory violation" is "not enough" to confer standing, "no matter how beneficial we may think the statute to be.") (citing *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 921 (11th Cir. 2020); *TransUnion*, 594 U.S. at 423 (a plaintiff cannot sue "merely [] to ensure a defendant's 'compliance with regulatory law.'"). Indeed, the Eleventh Circuit has already affirmed the dismissal of similar claims brought against PPM for lack

of standing. *Davis v. Pro. Parking Mgmt. Corp.,* 2023 WL 4542690, at *2 (11th Cir. July 14, 2023) (affirming dismissal for lack of standing where plaintiff alleged statutory violations from PPM's notice of non-payment, but failed to allege actual harm).

In order to demonstrate an injury-in-fact for a DPPA violation, Plaintiff has to plead an injury analogous to a "historical or common-law" cause of action. *Baysal v. Midvale Indemnity Co.,* 78 F.4th 976, 979 (7th Cir. 2023) ("The [DPPA] does not identify any particular compensable harm . . . in this situation, courts should inquire whether what the plaintiff asserts as injury has a historical or common-law analog."). He has not done so.

In *Baysal*, the Seventh Circuit affirmed dismissal of DPPA claims due to lack of standing, concluding that the plaintiff failed to assert an injury with a common-law analog, and noting that no "state ma[kes] disclosure of a driver's-license number tortious." *Id.* at 979. The Court reasoned that "a license number is not viewed as embarrassing (as a low grade point average or a poor credit score would be) or private (as medical details are) but as neutral," *Id.*; *id.* at 980 ("We have explained why a driver's-license number is not potentially embarrassing or an intrusion on seclusion. It is a neutral fact derived from a public records system, a fact legitimately known to many private actors and freely revealed to banks, insurers, hotels, and others . . . the disclosure of a number in common use by both public and private actors does not correspond to any tort.").

Additionally, as the *Baysal* court explained, there has only been one, federal appellate court decision post-*TransUnion* in which a court found standing in a DPPA action; namely, *Garey v. James S. Farrin, P.C.*, 35 F.4th 917, 922 (4th Cir. 2022). As *Baysal* noted, *Garey* is distinguishable because in *Garey*, the plaintiffs alleged actual harm due to their receipt of unsolicited, third-party attorney solicitations similar to junk faxes and robocalls. *Baysal*, 78 F.4th at 980. Here, there are no allegations of actual harm or even a disclosure to a third party, as Plaintiff admittedly received

only a single letter at his home address, from an entity he had voluntarily engaged with by parking and then failing to pay.

In contrast, a recent post-*TransUnion* federal appellate opinion addressing standing in the context of DPPA claims is *Greenstein v. Noblr Reciprocal Exch.*, 22-17023, 2024 WL 3886977, at *3 (9th Cir. Aug. 21, 2024), where, under facts similar to these, the court also found a lack of standing, absent some actual concrete harm resulting from the DPPA violation. *Greenstein* held that DPPA does not "provide a basis for standing," and rejected the plaintiff's attempt to analogize DPPA claims to invasion of privacy claims because the disclosure of motor vehicle information is not "highly offensive," "an egregious breach of the social norms," nor "offensive and objectionable to the reasonable person." *Id.*

In a slapdash effort to plead that he suffered some harm that would be remediable at common law, Plaintiff alleges, in conclusory fashion, that PPM's conduct caused "harassment, annoyance, nuisance, invasion of [his] privacy, and intrusion upon seclusion." DE 21 ¶¶ 3, 71.[5] None of these allegations are sufficient to confer standing. *See, e.g., Heres v. Medicredit, Inc.*, 2024 WL 3291738, at *12 (S.D. Fla. July 3, 2024) (dismissing allegation that debt collection letter "disrupted and intruded upon Plaintiff's solitude and peace" as "conclusory."); *Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011) ("[l]egal conclusions without adequate factual support are entitled to no assumption of truth.").

---

[5] Florida only recognizes "three categories of privacy torts: '(1) appropriation—the unauthorized use of a person's name or likeness to obtain some benefit; (2) intrusion—physically or electronically intruding into one's private quarters; and (3) public disclosure of private facts—the dissemination of truthful private information which a reasonable person would find objectionable." *Oppenheim v. I.C. Sys., Inc.,* 695 F. Supp. 2d 1303, 1308 (M.D. Fla.), *aff'd*, 627 F.3d 833 (11th Cir. 2010). Plaintiff only alleges the latter two here, each of which is addressed in turn..

### i. Plaintiff Cannot Establish Any Harm Stemming from PPM's Supposed "Disclosure"

Standing can only be premised on an alleged disclosure of private information where such disclosure is made "public." *Hunstein*, 48 F.4th at 1245. Here, Plaintiff concedes that PPM's alleged "disclos[ure]" was only sent privately to Plaintiff at his residence. DE 21 ¶¶ 20, 32. This falls far short of the requisite bar to establish remediable harm from an alleged disclosure of personal information. *Hunstein*, 48 F.4th at 1246 (finding no standing from defendant's alleged disclosure of plaintiff's private information to an unauthorized third-party: common law "requires far more than what [plaintiff] has offered." It requires disclosure to "the public at large," not just "communication by the defendant to a third person."); *Baysal*, 78 F.4th at 977 (standing requires "concrete injury traceable to the disclosure," such as injury via "leaked or hacked data."); *Nabozny v. Optio Sols. LLC*, 84 F.4th 731, 736 (7th Cir. 2023)("Because Nabozny's complaint does not allege that Optio publicized her private information, she has not suffered a cognizable injury… Without a public-exposure component, Nabozny's alleged injury is not analogous to the harm at the core of the public-disclosure tort."); *see also Bradley v. City of St. Cloud*, 2013 WL 3270403, at *4 (M.D. Fla. June 26, 2013) (disclosure to "one individual or a few" is "not actionable."). Here, unlike in *Hunstein, Baysal*, and *Nazbony*, PPM never disclosed Plaintiff's information to any third party. Thus, Plaintiff cannot allege he suffered any harm from PPM's alleged "disclosure" to him of his own name and address.

Further, a public disclosure is only actionable where it discloses information which "is highly offensive to a reasonable person." *Hunstein*, 48 F.4th at 1245. Here, the only information allegedly disclosed by PPM was Plaintiff's "name" and "home address" (DE 21 ¶ 22). Such information is categorically inoffensive. *Moore v. HighPoint Sols. LLC*, 2018 WL 2684112, at *6 (D.N.J. June 5, 2018) (dismissing claim based on disclosure of personally identifying information,

including social security numbers: "No common law tort proscribes the release of truthful information that is not harmful to one's reputation or otherwise offensive."); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) ("Even disclosure of personal information, including social security numbers" is insufficient); *Baysal*, 78 F.4th at 979 ("[A] driver's-license number is not potentially embarrassing…It is a neutral fact."). Of course, PPM's disclosure to Plaintiff of his own name and home address is far more innocuous than a disclosure of one's social security number. Again, Plaintiff cannot allege he suffered any actual harm. *City of Tallahassee v. Federated Publications, Inc.*, 2012 WL 5407280, at *1 (N.D. Fla. Aug. 9, 2012) (emphasizing lack of actual harm where defendant only disclosed the vehicle "owner's name and address"—"This is not a case in which the [defendant] has unnecessarily included on the violation notice extraneous personal information unrelated to the violation.").

### ii. Plaintiff Has Failed to Allege Any Remediable Harm Stemming from PPM's Supposed Invasion of Privacy or Intrusion Upon Seclusion

#### 1. There is No Right to Privacy in a Driver's License Information

There is a particularly "rigorous legal standard for asserting an invasion of privacy claim under Florida law." *Watts v. City of Port St. Lucie, Florida*, 2:15-CV-14192, 2015 WL 7736532, at *15 (S.D. Fla. Nov. 30, 2015). In evaluating an invasion of privacy claim, Florida courts focus not on a plaintiff's expectation of privacy in information, but rather, on whether a plaintiff has a "reasonable expectation of privacy" in a "place." *Allstate Ins. Co. v. Ginsberg*, 863 So. 2d 156, 162 (Fla. 2003); *Spilfogel v. Fox Broad. Co.,* 433 F. App'x 724, 727 (11th Cir. 2011). Applying this framework, one has no expectation of privacy in their medical records, where such records are kept at a hospital. *Bradley,* 2013 WL 3270403, at *4-5 (a hospital is not a "place" where one has a reasonable expectation of privacy: "Because Plaintiff does not allege that Defendants intruded into her home or another private place, she has not alleged facts in support of this claim."). By the

same token, Florida courts are clear that there is no invasion of privacy from accessing an individual's DMV information. *Watts v. City of Port St. Lucie, Fla.*, 2015 WL 7736532, at *15 (S.D. Fla. Nov. 30, 2015) ("The [defendant's] accessing of [plaintiff's] driver's license information…is [] not an intrusion into a 'place.'"). Indeed, the Eleventh Circuit and Florida courts routinely confirm that an individual has no right to privacy in his driver's license information. *Ela v. Orange Cnty. Sheriff's Office*, 2014 WL 325697, at *7 (M.D. Fla. Jan. 29, 2014) ("There is no [] right to privacy in the information protected by" DPPA, namely, "motor vehicle record information."); *see also Johansson v. Emmons*, 2010 WL 457335 (M.D. Fla. Feb. 4, 2010), at *5-6, 9 (M.D. Fla. Feb. 4, 2010) (dismissing invasion of privacy claim based on alleged access and dissemination of plaintiff's "social security number, driving history, photographs, tag number, and driver's license number.").

Plaintiff also fails to allege, because he cannot do so, that PPM has committed any intrusion, much less one "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Stoddard v. Wohlfahrt*, 573 So. 2d 1060, 1062 (Fla. 5th DCA 1991) (Plaintiff must demonstrate "as objectively as is possible [that the alleged misconduct] is atrocious and utterly intolerable in a civilized community."); *Ponton v. Scarfone*, 468 So. 2d 1009, 1011 (Fla. 2d DCA 1985); *Kent v. Harrison*, 467 So. 2d 1114, 1115 (Fla. 2d DCA 1985). Accessing one's DMV information "cannot, as a matter of law, be said to be atrocious, and utterly intolerable in a civilized community, nor is [such] access so outrageous in character, and so extreme, as to go beyond all possible bounds of decency." *Watts*, 2015 WL 7736532, at *16 (dismissing claim with prejudice: "[g]iven the rigorous legal standard for asserting an invasion of privacy claim under Florida law, there is no indication here more adequate pleading can save [plaintiff's] claim."); *Stasiak v. Kingswood Co-Op, Inc.*, 2012 WL 527537, at *3 (M.D. Fla. Feb. 17, 2012) (obtaining

plaintiff's credit report did not satisfy this standard) (citing *Oppenheim,* 695 F. Supp. 2d at 1306);

*Boyles v. Mid-Florida Television Corp.,* 431 So. 2d 627, 636 (Fla. 5th DCA 1983)).

### 2. Requests to Pay for Services Rendered are not Actionable Invasions of Privacy or Intrusions Upon Seclusion

In sending a single letter to Plaintiff's home seeking a payment he admits he owed, PPM's

conduct cannot form the basis for an invasion of privacy or intrusion upon seclusion claim. *Heres,*

2024 WL 3291738, at *11 ("Plaintiff lacks support for his position that receiving an unwanted

debt letter causes the same kind of harm as an intrusion upon seclusion at common law…Plaintiff

fails to provide a single case where a court found receiving a single letter constitutes an intentional

intrusion upon one's seclusion."). Indeed, requests for payment are generally insufficient to sustain

an invasion of privacy claim, even where such requests take the form of belligerent and hostile

debt collection tactics, which are not alleged, and could never be alleged, by Plaintiff, who received

a single nonpayment letter. *See*, *Oppenheim,* 695 F. Supp. 2d at 1309 (finding that 35-40

belligerent debt collection phone calls to plaintiff's home over a period of approximately three

months did "not rise to the requisite level of outrageous and unacceptable conduct") (citing *Kent*,

467 So.2d at 1114-15 (finding "campaign of telephonic harassment" for "several months" to be

insufficiently outrageous)); *Neeley v. Wells Fargo Fin., Inc.*, 2012 WL 5949106, at *1, *4-5 (M.D.

Fla. Nov. 28, 2012) (holding that a badgering stream of "belligerent" and "belittl[ing]" debt

collection phone calls made to plaintiff's cell phone and workplace did not satisfy this standard);

*Shuler v. Ingram & Assocs.,* 441 F. App'x 712, 720 (11th Cir. 2011) (affirming dismissal of claim

based on a debt collection call); *Deegan v. Specialized Loan Servicing, LLC*, 2020 WL 13356789,

at *6 (M.D. Fla. Nov. 13, 2020) (allegations of "at least 200 [debt collection] calls over a four-

year period" were insufficiently outrageous); *Shadlich v. Makers Nutrition LLC*, 2020 WL

5255133, at *3 (M.D. Fla. Sept. 3, 2020*)* ("over 98 phone calls over the course of a year" were

insufficiently outrageous) (citing *McGinity v. Tracfone Wireless, Inc.,* 5 Supp. 3d 1337, 1339, 1341-42 (M.D. Fla 2014) (holding over 6,000 harassing and threatening phone calls to be insufficiently outrageous)).

###### iii. Plaintiff Has Failed to Allege Any Remediable Harm Stemming from "Annoyance," "Nuisance," or "Harassment"

Lastly, Plaintiff pleads, in conclusory fashion, that he experienced "annoyance, nuisance" and "harassment" from PPM sending a single letter requesting payment. But as a matter of law, bare allegations of annoyance, nuisance and harassment are not cognizable theories of harm. *Oppenheim*, 695 F. Supp. 2d at 1310 ("no doubt" 35-40 debt collection phone calls were "annoying and bothersome," yet still, they could not sustain a privacy claim) (citing *Kent*, 467 So.2d at 1114–15 ("campaign of telephonic harassment" which lasted "for several months" was insufficiently offensive to sustain a claim)); *Branham v. TrueAccord Corp.*, 2023 WL 2664010, at *5 (N.D. Ill. Mar. 28, 2023) (noting that a "generalized claim of 'annoyance' . . . is not sufficient to confer standing."). Plaintiff's conclusory allegations of "annoyance," "nuisance," and "harassment" are insufficient to establish an injury-in-fact.  Put simply, Plaintiff lacks standing and his claims should be dismissed pursuant to Rule 12(b)(1).

#### II.  Plaintiff Cannot Plead a DPPA Claim

##### a.  Standard Applicable to a Rule 12(b)(6) Motion to Dismiss

To survive a motion to dismiss under Rule 12(b)(6), the complaint must contain sufficient factual matter to state a plausible claim for relief that rises "above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Edwards v. Prime Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010). Factual allegations beyond the "unadorned, the-defendant-unlawfully-harmed-me accusation" must be pled.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While a court must assume the factual allegations in a complaint as true, "[l]egal conclusions without adequate factual

support are entitled to no assumption of truth." *Mamani*, 654 F.3d at 1153 (internal citations omitted). "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

### b. DPPA Broadly Authorizes Business Uses of a Driver's Information, and Plaintiff Cannot Allege Any Impermissible Use by PPM

DPPA only bars the use of personal information from a motor vehicle record where such use is "for a purpose not permitted" by DPPA. 18 U.S.C. § 2724(a). Plaintiff bears the burden of showing an impermissible purpose. *Thomas v. George, Hartz, Lundeen, Fulmer, Johnstone, King, & Stevens, P.A.*, 525 F.3d 1107, 1112 (11th Cir. 2008). "[C]onclusory allegations" are not enough—Plaintiff must specifically allege the "impermissible purpose." *McDonough v. City of Homestead, Fla.*, 2021 WL 9276283, at *4 n.4 (S.D. Fla. Sept. 1, 2021) (dismissing allegations as "conclusory" where plaintiff pled that defendant "knowingly obtained, disclosed and used personal information" for a "use not permitted" by DPPA); *Chevaldina v. Katz*, 787 F. App'x 651, 655 (11th Cir. 2019) (same).

There are many permissible uses of DMV information under DPPA, including "legitimate business" use. *Young v. W. Pub. Corp.,* 724 F. Supp. 2d 1268, 1279 (S.D. Fla. 2010) (DMV information is "only denied to a narrow group of people that lack legitimate business"); *Taylor v. Acxiom Corp.*, 612 F.3d 325, 336 (5th Cir. 2010) ("Congress did *not* intend to suppress legitimate business uses of motor vehicle records."); *Cook v. ACS State & Loc. Sols., Inc.,* 663 F.3d 989, 995 (8th Cir. 2011) (DPPA protects "legitimate governmental and business needs for [DMV] information." It "defines 'legitimate business' broadly, including…private investigations, and anything related to the operation of a motor vehicle." It is designed to allow businesses to use

13

DMV "information that is necessary and essential for them to do business.") (quoting DPPA's legislative history). In analyzing DPPA, its purpose, and its legislative history, the Eighth Circuit could not identify a single business-related use of driver information which is impermissible. *Cook,* 663 F.3d at 995-96 ("[T]he only business that [DPPA co-sponsor] Moran expressed concern about was the use of driver information in direct marketing solicitations. Even this use was not prohibited.").

Rather than targeting PPM's legitimate business uses, DPPA was intended to prevent stalking, harassment and related crimes. *Margan v. Niles*, 250 F. Supp. 2d 63, 68–69 (N.D.N.Y. 2003). Indeed, DPPA arose after the death of an actress, Rebecca Schaeffer, whose stalker and killer obtained her address through DMV records. *Id.* at 68-69 ("[T]he murder of Rebecca Schaeffer led to [DPPA]." "Congress enacted [DPPA]" due to "the concerns of women who were being stalked because of easy access to motor vehicle records." "[T]he intent of this bill is simple and straightforward…to stop stalkers from obtaining the name and address of their prey before another tragedy occurs…[DPPA]…is a reasonable and practical crime fighting measure" intended to "close[] a loophole in the law that permits stalkers to obtain—on demand—private, personal information about their potential victims.") (quoting DPPA's legislative history).

District courts consistently dismiss DPPA claims on their face where there are no *plausible* allegations of an impermissible use. *See, e.g., McDonough v. Anoka Cnty.*, 799 F.3d 931, 954-55 (8th Cir. 2015) (affirming dismissal of plaintiff's DPPA complaint where the plaintiff alleged "in conclusory fashion that his personal information was obtained 'without probable cause or reasonable suspicion,'" but "[h]is allegations of underlying facts lack the specificity necessary to give rise to a reasonable inference that the Defendants obtained his personal information for an impermissible purpose."); *Kost v. Hunt*, 983 F. Supp. 2d 1121, 1134 (D. Minn. 2013) (complaint

failed to state a claim under DPPA where it did "not allege any facts that support an inference that those accesses [of plaintiff's motor vehicle data] were for an improper purpose rather than a permissible use..."); *Bass v. Anoka Cnty.*, 998 F. Supp. 2d 813, 821 (D. Minn. 2014) (internal citations omitted) ("[T]he court will not infer from bare, conclusory allegations that defendants' purposes were improper…Therefore, [plaintiff] has not adequately pleaded the DPPA claims under *Twombly* and *Iqbal*, and dismissal of the remaining timely DPPA claims is warranted."); *Hurst v. State Farm Mut. Auto. Ins. Co.*, 2012 WL 426018, at *11 (D. Del. Feb. 9, 2012) (granting motion to dismiss DPPA claims where the complaint did not contain "any factual allegations that plausibly suggest[ed] that the defendants accessed [plaintiff's] DMV records" for a purpose not permitted under DPPA); *Shadwell v. Clark*, 2009 WL 2970515, at *3 (W.D. Va. Sept. 16, 2009) (dismissing DPPA complaint where the plaintiff "has not alleged sufficient facts to demonstrate plausibly that [defendant] accessed his driver's information 'for a purpose not permitted under [the DPPA].'"); *Kampschroer v. Anoka Cnty.*, 57 F. Supp. 3d 1124, 1138 (D. Minn. 2014), *aff'd*, 840 F.3d 961 (8th Cir. 2016) (same); *Mallak v. Aitkin Cnty.*, 9 F. Supp. 3d 1046, 1066 (D. Minn. 2014) (same); *Potocnik v. Carlson*, 9 F. Supp. 3d 981, 989 (D. Minn. 2014) (same); *Cook,* 663 F.3d 989 (same).

Here, Plaintiff has failed to identify how PPM used his information for any impermissible purpose, instead conceding that PPM obtained his information to obtain payment for use of PPM's private parking lot—an obviously legitimate business purpose. DE 21 ¶¶ 19-21, 46. Plaintiff's failure to specifically identify an impermissible purpose alone defeats his claims, as such specific identification is required under DPPA. *Thomas*, 525 F.3d at 1112; *McDonough,* 2021 WL 9276283, at *4 n.4; *Chevaldina*, 787 F. App'x at 655; *McDonough v. Anoka Cnty.*, 799 F.3d at 954-55; *Kost*, 983 F. Supp. 2d at 1134; *Bass,* 998 F. Supp. 2d at 821; *Hurst,* 2012 WL 426018, at

*11; *Shadwell*, 2009 WL 2970515, at *3; *Kampschroer*, 57 F. Supp. 3d at 1138; *Mallak*, 9 F. Supp. 3d at 1066; *Potocnik*, 9 F. Supp. 3d at 989.

### c.   Plaintiff's Own Allegations and Incorporated Documents Show that PPM's Use of Plaintiff's Information is Expressly Authorized Under DPPA

As shown, Plaintiff has failed to adequately allege an impermissible use of his DMV information.  But beyond that, Plaintiff concedes that DPPA specifically authorizes the use of driver information for "fourteen (14) permissible uses." DE 21 ¶ 14. Plaintiff's own allegations and incorporated documents show at least two of those uses apply here to bar Plaintiff's claim.

### i.   DPPA Subsection (4) Expressly Authorizes PPM's Use of Plaintiff's Information in Anticipation of Litigation or Adjudication

DPPA expressly authorizes the use of DMV information "[f]or use in connection with any civil, criminal, administrative, or arbitral proceeding in any Federal, State, or local court or agency or before any self-regulatory body, including [for] investigation in anticipation of litigation." 18 U.S.C. § 2721(b)(4).

"The plain language" of § 2721(b)(4) is "extremely broad." *Thomas v. George, Hartz, Lundeen, Fulmer, Johnstone, King & Stevens, P.A.,* 2006 WL 8431100, at *5 (S.D. Fla. Nov. 7, 2006). DPPA allows commercial entities to obtain DMV information even where "much of the information obtained did not turn out to be useful," or even where it was never "used for any purpose whatsoever." *Id.* It does not matter whether the information was ever used in an adjudicatory proceeding—so long as the information was intended for ***potential*** use in a future proceeding, it is permitted. *Welch v. Jones*, 770 F. Supp. 2d 1253, 1259 (N.D. Fla. 2011) ("Had Congress intended § 2721(b) to require actual use—rather than only a purpose to use when appropriate—it could have said so."); *Thomas*, 525 F.3d at 1115 (dismissing DPPA claim where DMV records were obtained "for prospective, not-yet-filed litigation"); *Senne v. Vill. of Palatine,*

*Ill.*, 784 F.3d 444, 445 (7th Cir. 2015) (information is "for use" in connection with anticipated litigation "whether or not" the information "would ever be used."); *Graczyk v. W. Publishing Co.*, 660 F.3d 275, 279 (7th Cir. 2011) (theoretical future use is sufficient—uses are not required to be "immediate" or certain); *Taylor*, 612 F.3d at 337 (use is permitted even where it is "likely" that much of the information obtained will never be actually used for such a purpose); *Young,* 724 F. Supp. 2d at 1272 (information can be used and disclosed so long as it "is used in connection or anticipation with some type of legal proceeding.").

Courts across the country routinely hold that where DMV information is obtained to send notices, charges, or tickets in connection with driving or parking, such use is in anticipation of litigation, and is therefore authorized under DPPA. *City of Tallahassee,* 2012 WL 5407280, at *1 (dismissing DPPA claim where DMV information was obtained to send violation notices to drivers who ran red lights); *Senne*, 784 F.3d at 445 (affirming DPPA dismissal where DMV information was used to send parking tickets); *Lucas v. Moore*, 412 F. Supp. 3d 749, 755 (S.D. Ohio 2019) (dismissing DPPA claim where DMV information was used in connection with traffic violation); *Banks v. Dep't of Motor Vehicles for Cal.,* 419 F. Supp. 2d 1186, 1194 (C.D. Cal. 2006) (dismissing DPPA claim as "patently frivolous" where plaintiff's address was obtained to mail him a notice concerning a traffic ticket); *Buxton v. Hartin Asset Mgmt., LLC*, 2023 WL 4861724, at *8 (W.D. Mich. July 31, 2023) (dismissing DPPA claim where information was used to collect on a debt). In requesting payment and initiating a potential dispute resolution procedure, PPM acted in anticipation of potential litigation.

Plaintiff pleads (and thus admits) that PPM only used his information to send him a "parking charge notice" to initiate a potential litigation or adjudicatory/dispute resolution procedure. DE 21 ¶¶ 17, 19; *see also* Notice at 1-2 ("**Important: This notice is an attempt to**

**collect a debt, and any information obtained will be used for that purpose. You have the right to dispute the debt**…**FAILURE TO PAY THIS PARKING CHARGE NOTICE MAY RESULT IN THIS MATTER BEING REFERREED TO COLLECTIONS**.”). This is not only self-evident from the face of the Notice, but it is also clearly authorized by Florida statute, which requires adjudication. *See* Fla. Stat. § 715.075(1)(d) (2024) (mandating that parking charge notices must include a “method to appeal,” and that such “appeal process must use a neutral third-party adjudicator.”). The Notice repeatedly discloses that Plaintiff had a right to appeal the parking charge, and thereby initiate the precise adjudication contemplated by section 715.075(1)(d) (and DPPA Subsection 4). *See* Notice at 1 (“**Important:…You have the right to dispute the debt. Disputes can be made online at <u>www.parkinginvoice.com</u>**.”).  And the Notice further provides:

> While we take great care to ensure that our information is accurate, we understand that errors can occur and will investigate claims promptly. If you believe this Parking Charge Notice has been issued incorrectly, or should have been addressed to someone else, you can file a dispute at **www.parkinginvoice.com**. This will ensure your Parking Charge Notice is put on hold and you will receive an acknowledgement that a dispute has been made. Making a dispute online enables us to deal with your dispute more quickly. *Id*. at 2.

As PPM only obtained Plaintiff’s information after Plaintiff failed to pay the amount owed and in anticipation of a potential adjudicatory procedure, there can be no doubt that such use was authorized by the broad permissible use espoused in DPPA § 2721(b)(4). *See City of Tallahassee*, 2012 WL 5407280, at *1-2 (dismissing DPPA claims pursuant to DPPA § 2721(b)(4) where the defendant used DMV information to send notices to drivers who ran red lights). Just like the court found in *City of Tallahassee*, PPM’s “notice initiates a process that is informal but that is nonetheless an administrative proceeding, [it] bring[s] the disclosures within paragraph (4).” *Id.*

### ii.   PPM's Use of Plaintiff's Information Was Authorized by Florida Law, and Compliant with DPPA Subsection (14)

DPPA also expressly permits the use of DMV information "[f]or any other use specifically authorized under the law of the State that holds the record, if such use is related to the operation of a motor vehicle or public safety." 18 U.S.C. § 2721(b)(14). In pleading that PPM used Plaintiff's information to send a "parking charge notice," Plaintiff concedes both points. DE 21 ¶ 20. PPM's Notice is "related to the operation of a motor vehicle," (18 U.S.C. § 2721(b)(14)), and it is also authorized by Florida law, which provides that parking charge notices may be "mailed" to the vehicle's owner. Fla. Stat. § 715.075(1)(c) (2024).

Section 715.075 provides an extensive regulatory framework clarifying the precise permissible boundaries for parking charge notices. *Id.* § 715.075(1)(a)-(d) (providing that the "owner or operator of a private property used for motor vehicle parking" may mail an "invoice for parking charges," subject to certain timing, form, and content restrictions). The Florida Legislature has made clear that these regulations are comprehensive; so long as they are complied with, parking charge notices are permissible and expressly authorized. *Id.* § 715.075(2) ("Any [] ordinance or regulation" "restricting or prohibiting a right of a private property owner or operator" to mail parking charge notices "is null and void."). Section 715.075 comprehensively delineates the few impermissible uses of a driver's "personal information." *Id.* § 715.075(5) ("An owner or operator of a private property used for motor vehicle parking may not sell, offer to sell, or transfer to another person for sale any personal information obtained from a party using the private property for parking services."). There is no allegation here that PPM engaged in any of this narrowly prohibited conduct. On the contrary, Plaintiff affirmatively concedes that PPM only sent his personal information to Plaintiff's home in order to collect a debt lawfully owed. DE 21 ¶¶ 17, 19-20.

*City of Tallahassee* is instructive. 2012 WL 5407280, at *1. In *City of Tallahassee*, the defendant only obtained the plaintiff's information in connection with a red-light program, which was authorized by statute. *Id.* (citing Fla. Stat. § 316.0083). Much like here, the statute authorized the defendant to send notices of red-light violations, although the statute did not explicitly authorize obtaining a driver's personal information from the DMV in order to send those notices. *See* Fla. Stat. § 316.0083. Nonetheless, the court held that since "the red-light program is specifically authorized by Florida law and relates to the operation of motor vehicles, [this] bring[s] the disclosures within paragraph (14)." *Id.* at *2. Here too, since PPM's Notice was "specifically authorized by Florida" statute, (*id.*), and related to the operation of motor vehicles, it is clearly permissible under DPPA § 2721(b)(14).

## CONCLUSION

Plaintiff lacks standing to assert a DPPA claim. But even if Plaintiff had standing, his claim fails as a matter of law. Plaintiff has not alleged an impermissible use under the DPPA, nor could he given that PPM's alleged use falls squarely within certain "permissible uses" enumerated in the statute. For these reasons, as set forth herein, PPM respectfully requests that Plaintiff's Amended Complaint be dismissed in its entirety, with prejudice.

Dated: September 30, 2024              Respectfully submitted,

COZEN O'CONNOR

/s/ *Jason Domark*
Jason Domark, Esq.
Florida Bar No. 880191
jdomark@cozen.com
Hayley H. Ryan, Esq.
Florida Bar No. 1032623
hryan@cozen.com
Melissa Siebert (*admitted pro hac vice*)
msiebert@cozen.com
200 S. Biscayne Blvd., Suite 3000

Miami, FL 33131
Tel: (305) 397-0801
Fax: (305) 704-5955
*Counsel for Defendant, Professional Parking
Management Corporation*

**CERTIFICATE OF SERVICE**

       I hereby certify that on September 30, 2024, I served a copy of the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified below in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Rachel Dapeer, Esq.
**Dapeer Law P.A.**
20900 NE 30th Avenue, Suite 417
Aventura, FL 33180
Tel: (305) 610-5223
e-mail: rachel@dapeer.com
*Counsel for Plaintiff*
Served via transmission of Notice of
Electronic Filing generated by CM/ECF

Manuel S. Hiraldo, Esq.
**Hiraldo P.A.**
401 E. Las Olas Boulevard, Suite 1400
Fort Lauderdale, FL 33301
Tel: (954) 400-4713
E-mail: mhiraldo@hiraldolaw.com
*Counsel for Plaintiff*
Served via transmission of Notice of
Electronic Filing generated by CM/ECF

*/s/ Jason Domark*