UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-61213-CIV-SINGHAL

RICHARD JEANMARY,
individually and on behalf
of all others similarly situated,

     Plaintiff,

vs.

PROFESSIONAL PARKING
MANAGEMENT CORPORATION,

     Defendant.

_____/

## ORDER

Plaintiff Richard Jeanmary parked his vehicle at a parking lot monitored by Defendant Professional Parking Management Corporation ("PPM"). But after parking, he drove off without paying. PPM sent him a bill, which he paid. Generally, that would be the end of the story. Instead, Jeanmary sued PPM in federal court, bringing a class action. In his Second Amended Class Action Complaint (DE [41]), Jeanmary alleges that PPM accessed his driving records from the Department of Motor Vehicles (DMV), violating the Driver's Privacy Protection Act, 18 U.S.C. §§ 2721-2725 ("DPPA"). PPM moved to dismiss the Second Amended Complaint, *see* (M. Dism. (DE [45])), and that motion is fully briefed and ripe for review.

I.     BACKGROUND

The facts are straightforward. PPM monitors vehicle parking lots and sends notices to vehicle owners who did not pay for parking. (DE [41] ¶¶ 15-16). Using license plate readers, PPM records the license plates of vehicles as they enter and leave the lot. *Id.* ¶

16. If a driver does not pay for parking, PPM reaches out to the DMV and, based on the license plate information, requests the vehicle owner's records, including name and address. *Id.* ¶¶ 2, 15-17. PPM then sends the vehicle owner the parking bill. *Id.* ¶ 17. On December 23, 2024, Jeanmary parked at a lot monitored by PPM, located at 300 W. Broward Blvd., Fort Lauderdale, FL 33312. *Id.* ¶ 19. Jeanmary left without paying, and later received a parking charge notice from PPM for $55.[1]  *Id.* ¶¶ 17-20; *see* (Parking Charge Notice (DE [45-1])). The notice included photos of Jeanmary's license plate that PPM had recorded. (DE [41] ¶ 21). Jeanmary paid the charge via credit card. *Id.* ¶ 22.

After paying his bill, Jeanmary brought a class action against PPM, alleging that PPM violated the DPPA by accessing his personal records—and that of at least 50 other people—stored with the DMV. *Id.* ¶¶ 2, 72. Jeanmary claims that by accessing his DMV records, PPM invaded his privacy, intruded upon his personal and private space, harassed him, annoyed him, caused a nuisance, and violated his statutory privacy rights. *Id.* ¶ 3. He seeks declaratory and injunctive relief and statutory damages for himself and the class. *Id.* at p. 13.

Prior to beginning the legal discussion of this case, it bears noting that Jeanmary does not like Defendant's business model, yet he attempted to take full advantage of it. In his Second Amended Class Action Complaint Jeanmary alleges at paragraph 18, "Defendant does not need to utilize license plate readers at its parking lots, and could instead use parking attendants to issue parking tickets. Instead, Defendant has opted to utilize license plate readers and to unlawfully perform DMV record lookups to avoid the costs of paying for attendants." (DE [41] ¶ 18). Maybe had Defendant used attendants,

---

[1] The bill was for $90.00, but PPM would reduce the bill to $55.00 if the payee paid within fifteen days, which Jeanmary did. (DE [41] ¶ 20). Ultimately Jeanmary paid $59.99, including a $4.99 convenience fee. (DE [41] ¶ 22); (DE [45-1] p. 2).

the cost would have been higher.  Maybe it would have been lower.  Those things the Court does not know because courts don't run businesses. What the Court does know is that Plaintiff utilized Defendant's services, under their business model, and left without paying, only to then complain in the form of a federal lawsuit about the method of collection. In other words, the Court doesn't even get to the DMV record lookup—the alleged DPPA violation—until Plaintiff here, and ostensibly each of the class members, have used Defendant's property and failed to pay for that use.  Put simply, the alleged DPPA violation occurs only after Plaintiff and those he represents have easily met the definition of Theft under Florida Statute § 812.014(1)(a). That definition gives fair notice of the following criminal conduct:

> (1) A person commits theft if he or she knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently:
>   (a) Deprive the other person of a right to the property or a benefit from the property.

> *Id.*

Because Jeanmary does not allege a cognizable injury, this Court finds he lacks standing and so thankfully the Court need not address whether PPM violated the DPPA (including whether Jeanmary committed theft).

## II.   LEGAL DISCUSSION

### A. Standing

For standing, Plaintiff must show: "(1) an injury in fact; (2) a causal connection between the injury and the alleged misconduct; and (3) a likelihood that the injury will be redressed by a favorable decision." *L.M.P. on behalf of E.P. v. Sch. Bd. of Broward Cnty.*, 879 F.3d 1274, 1281 (11th Cir. 2018). An injury can be considered concrete "if it actually exists—that is, if it is 'real, and not abstract.'" *Hunstein v. Preferred Collection & Mgmt.*

3

*Servs.*, Inc., 48 F.4th 1236, 1242 (11th Cir. 2022) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016)). Physical injury and financial harm are obvious real injuries, but intangible harm can also be a real injury. *Id.* at 1243. For intangible harms, courts analogize to "longstanding torts" to "determine whether an alleged intangible injury meets the concreteness requirement." *Id.* at 1244 (citing *TransUnion LLC v. Ramirez*, 141 S.Ct. 2190, 2204–05 (2021)).

When alleging harm, a plaintiff must plead facts showing the actual injury, not just conclusions of law. "Only factual allegations, and not legal conclusions, are relevant to our inquiry, and 'mere conclusory statements . . . do not suffice.'" *Glynn Env't Coal., Inc. v. Sea Island Acquisition, LLC*, 26 F.4th 1235, 1240 (11th Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). When alleging intangible injuries, the Plaintiff must explain "how and why" he was injured. *Id.* at 1241. *See, e.g. Mraz v. I.C. Sys., Inc.*, No. 218CV254FTM38NPM, 2020 WL 7125629, at 1. (M.D. Fla. Dec. 4, 2020) ("Mraz alleged he suffered emotional distress (i.e., 'anger, anxiety, emotional distress, fear, frustration, humiliation, and embarrassment') from ICS' collection attempt. . . . Mraz alleged the how and why of his injury by telling ICS the distress he felt from the letter . . . .").

Jeanmary alleges two types of injury. He claims intangible injuries including violations of his statutory privacy rights, harassment, annoyance, nuisance, invasion of privacy, and intrusion upon seclusion. *See* (DE [41] ¶¶ 3, 49-52). Jeanmary also alleges tangible financial harm from having to pay the bill that PPM sent him after obtaining his contact information. *Id.* at ¶ 53.

We first examine Jeanmary's claim of intangible privacy injuries. But Jeanmary makes the most cursory and conclusory of allegations. He professes that PPM's alleged violation of the DPPA "caused Plaintiff and the Class Members harm, including violations

4

of their statutory privacy rights, harassment, annoyance, nuisance, invasion of their privacy, and intrusion upon seclusion in a space that is personal and private to Plaintiff and the Class Members." *Id.* ¶ 3. This is a bare bones conclusion of law, not a factual allegation of harm. He does not explain *how* he was actually hurt. *See Glynn*, 26 F.4th at 1241. He does not allege that he felt violated or embarrassed, or that receiving this notice impacted his sleep. He only offers a conclusory recitation of legal injuries. His later allegations are no better: "Defendant harassed and invaded Plaintiff's privacy and solitude by obtaining, disclosing, and using Plaintiff's personal and private motor vehicle record information." (DE [41] ¶ 51). Again, this is a basic legal conclusion—Jeanmary does not explain how he was harassed or how his privacy and solitude were actually injured. Jeanmary fails to allege that he was pained by PPM's actions. He falls short of claiming that he suffered an intangible injury to his privacy.

Even if Jeanmary's allegations were not conclusory, Jeanmary fails to show that PPM's alleged violation of his statutory privacy rights, in and of itself, actually injured him. To adequately allege a statutory violation as an injury, the plaintiff must analogize the statutory violation to a common-law tort cause of action. *Hunstein*, 48 F.4th at 1243. To be sufficiently analogous, the statutory violation must satisfy all the elements of the common-law tort. *Id.* at 1244. Jeanmary unsuccessfully attempts to analogize PPM's access of his DMV records to an invasion of privacy claim. Under Florida law, establishing invasion of privacy requires a physical or electronic intrusion "into a 'place' in which there is a reasonable expectation of privacy." *Allstate Ins. Co. v. Ginsberg*, 863 So. 2d 156, 162 (Fla. 2003); *Spilfogel v. Fox Broad. Co.*, 433 Fed. App'x 724, 727 (11th Cir. 2011) ("Florida law explicitly requires an intrusion into a private place and not merely into a private activity."). Accessing motor vehicle records is not equivalent to an intrusion into a "place."

*See Watts v. City of Hollywood*, 146 F.Supp. 3d 1254, 1267 (S.D. Fla. 2015) ("The City's accessing of Watts's driver's license information in the DAVID system is likewise not an intrusion into a 'place.'"). Jeanmary's claim of intangible harm is unfounded.

Jeanmary also fails to allege financial harm. His argument is that he was injured by receiving a bill that he owed. Although most of us have felt upset by receiving an unwanted bill, receiving a bill for services accepted is not a legal injury. *Maitland v. Spectrum*, No. 3:17-CV-1232-J-20JBT, 2019 WL 13072397, at *2 (M.D. Fla. Aug. 22, 2019) (plaintiff was not injured by paying a bill that he owed); *Rajamin v. Deutsche Bank Nat. Tr. Co.*, 757 F.3d 79, 85 (2d Cir. 2014) (plaintiff lacked standing because he only paid what he owed). Paying a bill that you owe is the most basic tenet of financial responsibility, not a legal injury.

Jeanmary does not allege that he did not owe the money he paid. He admits that he parked in the parking lot, and he does not claim to have paid for parking at the time he parked. (DE [41] ¶¶ 18-20).  By parking in Defendant's lot, Jeanmary did several things. For example, he received a benefit. He deprived Defendant of the use of their land for other things. And he knows this as he does not challenge the amount of the bill.  He only challenges the manner in which the bill was sent. Thus, he owed PPM for the time he parked in their lot.  But without being able to show that he was injured by the bill, Jeanmary lacks standing to challenge the mailing itself.

III.    CONCLUSION

Because Jeanmary fails to allege an injury, he lacks standing to bring this suit. Accordingly, it is hereby **ORDERED AND ADJUDGED** that Defendant's [45] Motion to Dismiss is **GRANTED**. Plaintiff Jeanmary's claim is **DISMISSED WITHOUT PREJUDICE.**

The Clerk is directed to **CLOSE** this case, and any pending motions are **DENIED AS MOOT**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Florida, this 4th day of February 2026.

_____
RAAG SINGHAL
UNITED STATES DISTRICT JUDGE

Copies to counsel of record via CM/ECF